**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**TRENTON DIVISION**

| | |
|---|---|
| **HELSINN HEALTHCARE S.A.,and ROCHE PALO ALTO LLC,** | ) Docket No. 3:11-cv-03962-MLC-DEA ) (Consolidated) ) |
| **Plaintiffs,** | ) ) |
| versus | ) Courtroom No. 6W ) Clarkson S. Fisher Building |
| **DR. REDDY'S LABORATORIES INC., DR. REDDY'S LABORATORIES LTD, SANDOZ INC., TEVA PHARMACEUTICALS USA, INC., and TEVA PHARMACEUTICAL INDUSTRIES, LTD.,** | ) & U.S. Courthouse ) 402 East State Street ) Trenton, New Jersey 08608 ) ) ) ) ) July 30, 2014 |
| **Defendants.** | ) 11:40 A.M. |

TRANSCRIPT OF TELEPHONE CONFERENCE
BEFORE HONORABLE DOUGLAS E. ARPERT
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

| | |
|---|---|
| For Helsinn Healthcare S.A.: | Saul Ewing LLP By:  CHARLES M. LIZZA, ESQ.        WILLIAM C. BATON, ESQ. One Riverfront Plaza, Suite 1520 Newark, New Jersey 07102-5426 |
| | Paul Hastings LLP By:  ERIC W. DITTMANN, ESQ. 75 East 55th Street New York, NY 10022 |
| ESR/Courtroom Deputy: | Charmaine Ellington |
| **TRANSCRIPTION SERVICE:** | **TRANSCRIPTS PLUS, INC.** **435 Riverview Circle** **New Hope, Pennsylvania 18938** **Telephone:  215-862-1115** **Facsimile: 215-862-6639** **e-mail <u>CourtTranscripts@aol.com</u>** |

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

APPEARANCES
(Continued)

| | |
|---|---|
| For Teva Pharmaceuticals Industries, Ltd: | Lite DePalma Greenberg, LLC<br>By:　MAYRA VELEZ TARANTINO, ESQ.<br>Two Gateway Center, Suite 1201<br>Newark, New Jersey 07102<br><br>Winston & Strawn LLP<br>By:　JOVIAL WONG, ESQ.<br>1700 K Street, N.W.<br>Washington, D.C. 20006-3817 |
| For Dr. Reddy's Laboratories, Inc., *et al.*: | Budd Larner, PC<br>By:　STUART SENDER, ESQ.<br>　　　MICHAEL IMBACUAN, ESQ.<br>150 John F. Kennedy Parkway<br>Short Hills, New Jersey 07078-2703 |
| For Sandoz, Inc.: | Hill Wallack, LLP<br>By:　ERIC ABRAHAM, ESQ.<br>202 Carnegie Center<br>CN 5226<br>Princeton, NJ 08540<br><br>Morrison & Foerster LLP<br>By:　MATTHEW D'AMORE, ESQ.<br>　　　JAYSON COHEN, ESQ.<br>250 West 55th Street<br>New York, NY 10019-9601 |

```
 1              TRENTON, NEW JERSEY  JULY 30, 2014   2:48 P.M.
 2              (Call to order of the Court)
 3              THE COURT:  Hello, good morning.
 4              UNIDENTIFIED ATTORNEY:  Good morning, Your Honor.
 5              UNIDENTIFIED ATTORNEY:  Good morning, Your Honor.
 6              THE COURT:  This is counsel on the Helsinn DRL case?
 7              UNIDENTIFIED ATTORNEY:  That's correct.
 8              THE COURT:  And who's on for Helsinn, please?  Enter
 9   your appearances.
10              MR. LIZZA:  Sure, Your Honor.  Charlie Lizza and Bill
11   Baton of the Saul Ewing law firm.
12              THE COURT:  Good morning.
13              MR. DITTMANN:  And, good morning, Your Honor.  This
14   is Eric Dittmann from Paul Hastings, also on behalf of Helsinn.
15              THE COURT:  Good morning, Mr. Dittmann.
16              And who wants to be heard for DRL?
17              MR. SENDER:  Stuart Sender and Michael Imbacuan.
18              THE COURT:  Good morning, Mr. Sender, Mr. Imbacuan.
19   Okay.
20              MR. IMBACUAN:  Good morning, Your Honor.
21              THE COURT:  Good morning. And who else is on the
22   line this morning?
23              MS. TARANTINO:  Good morning.  For Teva is Mayra
24   Tarantino from Lite DePalma Greenberg, LLC.  And joining me is
25   Jovial Wong from Winston & Strawn.
```

 1             THE COURT:  Good morning, Ms. Tarantino.  Okay.  And
 2   who else?  Someone from Sandoz, I assume?
 3             MR. ABRAHAM:  Yes, Judge, good morning.  This is Eric
 4   Abraham from Hill Wallace.  And I also have Matthew D'Amore and
 5   Jayson Cohen from Morrison Foerster.
 6             THE COURT:  Good morning, Mr. Abraham.
 7             MR. ABRAHAM:  Good morning.
 8             THE COURT:  Other than some housekeeping, which we'll
 9   get to in a minute, the item on my agenda for this morning is
10   defendants' request that the Court compel Helsinn to produce a
11   witness for a 30(b)(6) deposition on certain identified topics
12   in their notice which -- to which plaintiff has objected based,
13   in large part, on the parties' agreement not to conduct
14   duplicative discovery and, in more specific terms, the Court's
15   order -- joint stipulation and order consolidating these
16   actions which was entered on May 29th.  The specific provision
17   of which states that the parties agree to limit fact discovery
18   to new infringement, validity, and enforcability issues raised
19   by the asserted claims of the '219 patent.  And the essential
20   difference, as far as I can telling having read the parties'
21   joint submission dated July 3rd, is whether the topics and
22   subject matter of the proposed 30(b)(6) deposition is within
23   the parameters agreed to by the parties and ordered by the
24   Court, that being new infringement, validity, and enforcability
25   issues raised by the '219 patent.  Defendants taking the

1  position that it is new; plaintiff taking the position that
2  this is more of the same, which has been exhaustively discussed
3  at a series of over a dozen prior depositions, and contending
4  that defendants can point to nothing new here to substantiate
5  the present request.
6        Mr. Dittmann, have I captured the essence of the
7  issue?  And is there anything more you want to say on the
8  subject?
9        MR. DITTMANN:  I think you've captured the essence,
10 Your Honor, yes.  And I'd be happy to elaborate, but I think
11 Your Honor seems to have a very good handle on the dispute
12 between the parties.
13       THE COURT:  Okay.  Well, I appreciate that.
14       How about from -- how about from the defendants'
15 perspective?  Let me be a little more pointed:  What are the
16 plaintiffs missing here?  And I'll even tip my hand a little
17 bit, what am I missing here having fairly extensively reviewed
18 the language of the '219 patent and the lead patents, I'm
19 having a hard time seeing the areas of difference about which
20 you seek to inquire.
21       MR. D'AMORE:  Your Honor, this is -- thank you for
22 your question.  This is Matthew D'Amore from Morrison &
23 Foerster for Sandoz.
24       I'm actually going to turn the microphone over to my
25 associate, Jayson Cohen, who you haven't spoke with yet, and I

1  wanted to introduce him, and then let him answer Your Honor's
2  question --
3           THE COURT:  All right.
4           MR. D'AMORE:  -- if that's all right.
5           THE COURT:  Thank you.  Good morning, Mr. Cohen.
6           MR. COHEN:  Good morning, Your Honor.  This is Jayson
7  Cohen for Sandoz.
8           I wanted to speak directly to Your Honor's question.
9  I think one way to frame this is if we -- if you have the July
10 3rd letter in front of you, what was submitted as Exhibit G to
11 that letter, I think there's a numbering issue in the exhibit
12 book.  What was submitted as Exhibit G was a chart of the
13 different claims that have been asserted against the
14 defendants.
15          THE COURT:  Okay.  I'm with you.
16          MR. COHEN:  So I wanted to -- so on Page 3 of that
17 exhibit, the claims for the '219 patent.  And what we've done
18 here is we've highlighted the terms that are unique -- the new
19 terms that are unique to the '219 patent.  And our -- our view
20 is that, number one, we have promised not to repeat discovery
21 from the first case, and I think we've stuck with that so far.
22 And, in fact, we have not noticed any depositions of people who
23 were deposed in the first case, et cetera.
24          In looking here at Page 3 of Exhibit G, we've
25 highlighted the new claim elements in the '219 patent.  And

1  it's really -- our 30(b)(6) deposition notice is really
2  directed at these new elements of the claim.  And the
3  deposition testimony that we want is to get specifically
4  plaintiffs' knowledge and positions with respect to, for
5  example, the conception and reduction to practice of the new
6  aspects of these claims that do not appear in the first -- in
7  the claims of the first three patents.
8         And so I guess sort of to frame this further, you
9  know, this patent was filed only as of May 23rd, 2013.  At that
10 point in time, fact discovery on the first three patents had
11 closed.  And that's just when the -- that's just when the
12 patent application was filed.  It didn't issue until December,
13 2013.  It wasn't asserted against us until February of 2014.
14         So there was no point in the first case where the
15 parties or the defendants had any reason to believe that they
16 need to focus discovery on the new claim elements that only
17 appeared once the '219 patent issued.
18         And so let me -- as I said, Your Honor, let me
19 directly -- direct you to Exhibit B of the letter, which are
20 the -- which are the topics, and specifically on Pages 7
21 through 9.  And I'd like to group together certain of these
22 topics.  Topics 1 through 5, 7 and 8.  So, six of the seven
23 topics at issue here are really focused on the conception and
24 reduction to practice and the development of the newly created
25 inventions in the '219 patent.

1          And to the extent Your Honor feels that we haven't
2   narrowed this sufficiently to focus only on those new claim
3   elements, we're certainly willing to do so today.
4          But we -- our intent here is really to get
5   plaintiffs' knowledge, get their positions on the new claim
6   elements.  Let me take a couple of the claim elements, in
7   particular, that are important to this case:
8          For the first time in the '219 patent, the patent's
9   claiming the amount of the active ingredient of the product.
10  In the previous three patents, the amount in the product was
11  not actually a limitation of the claims.  And so this further
12  narrows the claims from what was at issue in the first three
13  cases, but it also changes the focus on -- of discovery to that
14  specific dose, and how that was -- how it came about.  What the
15  -- who, what, when, where, and why with respect to specifying a
16  specific dose of the active ingredient.  And that wasn't
17  necessary in the first case.
18         A second element here is in the preamble, the
19  plaintiffs are claiming that the limitation -- or the language
20  that says, "for intravenous administration to a human to reduce
21  the likelihood of cancer chemotherapy-induced nausea and
22  vomiting."
23         Their -- plaintiffs are taking the position that
24  that's a claim element of the claim, their claim
25  (indiscernible) of the claim and that element does not appear

1  in any of the previous patents.

2         And how that really gets translated into discovery in
3  this case is the parties in this first case did not have to
4  focus on specifically this claim element, and specifically the
5  work relating to showing "intravenous administration to a human
6  to reduce the likelihood of cancer chemotherapy-induced nausea
7  and vomiting."  And so our topics, 1 through 5, 7, and 8, are
8  geared towards discovery information specifically about that
9  element.

10         And so these are really -- we feel these are plain
11 vanilla topics, they're not broad topics.  And specifically
12 with respect to, you know, the development of their claimed
13 invention and the conception and reduction to practice of those
14 claim elements, and so that's why we feel we're entitled to --
15 we believe we're entitled to get that discovery as to those new
16 claim elements.

17         In addition to being related to our on sale bar
18 defense in this case, these specific topics, 1 through 5, 7,
19 and 8, also relate to the obviousness defense.  Because now the
20 issue -- when did information become publically available?
21 Specifically about -- for example, the dose of palonosetron
22 that would be effective specifically to reduce the likelihood
23 of cancer chemotherapy-induced nausea and vomiting.

24         And so, you know, it's with that in mind that we're
25 seeking the depositions.

1             THE COURT:  Let me ask --
2              MR. COHEN:  There's only one more -- go ahead, Your
3   Honor.
4             THE COURT:  Let me ask you whether these are issues
5   or subjects which could be addressed in the -- by the experts
6   in this case, rather than additional fact depositions.
7             MR. COHEN:  With respect to the Helsinn's knowledge
8   as to what happened when, and who was involved, you know, we
9   believe that that's -- that's really knowledge that's specific
10  to the plaintiffs.  It's fact information that their experts
11  might use, but it's still information that comes from Helsinn
12  and doesn't -- isn't generated by their experts.
13            THE COURT:  How -- what is your projection of the
14  duration of this deposition?  How long is it going to take you
15  to cover this limited field of information?
16            MR. COHEN:  We had hoped to receive from Your Honor a
17  seven-hour deposition on all the topics.
18            THE COURT:  Okay.
19            MR. COHEN:  So we felt we could easily finish this
20  within a day.  We're not asking for a multiple day deposition
21  here.
22            And we're not asking for individual fact witnesses on
23  this.  We have our -- we're --
24            THE COURT:  Yeah.
25            MR. COHEN:  We've decided to streamline this case to

1  that only for a 30(b)(6) deposition.

2       I'd like to mention the last topic, Your Honor,
3  because the last topic is also a very common topic in patent
4  litigation, Topic 4, which is on the patent prosecution.  And
5  the way this topic is listed in Exhibit B here on Page 7, we've
6  already narrowed this.  And while we've offered it -- we're
7  only interested in the patent prosecution for this patent and
8  suit and its immediate parent application because there are
9  strong ties between those two.

10      But this -- the (indiscernible) patent family is very
11 big here now, and we're not asking for discovery on all of
12 that.  Only those two patent prosecutions.

13      And this is directly relevant to our equitable
14 defenses in the case.  We have set forth the basis for our
15 equitable defenses in answering plaintiffs' interrogatories.
16 And asking about having a 30(b)(6) witness from plaintiff to
17 ask him about the patent prosecution is meant to provide
18 information that we believe is relevant to our equitable
19 defenses in the case.

20      THE COURT:  All right.  Thank you.

21      MR. COHEN:  And with that, Your Honor -- yes?

22      THE COURT:  Yeah, with that, go ahead.  Conclude.
23 I'm sorry, I cut you off.

24      MR. COHEN:  I'm sorry.  Your Honor, I think that
25 basically we believe that getting this 30(b)(6) deposition is a

1  very streamlined efficient way to get the basic discovery that
2  we believe we need in the case with respect to those new patent
3  claim elements in the '219 patent.
4             And with that, Your Honor, I'll, you know, hand it
5  back to you.  And if you have any questions, I'd be happy to
6  answer them.
7             THE COURT:  Thank you, Mr. Cohen.  Mr. Dittmann,
8  based on what you heard today from Mr. Cohen, do you want to
9  respond to the suggestion that these are new claim elements in
10 the '219 patent, very limited and discreet inquiry into those
11 subjects or those claim elements along the lines that Mr. Cohen
12 suggested, all of which can be done with a single witness in a
13 single day?
14            MR. DITTMANN:  Sure.  No, I would be happy to, Your
15 Honor.
16            I guess there -- the first point about a single
17 witness in a single day, and these are some disparate topics,
18 some are referring to the confidential work that Helsinn had
19 done over the course of five, six years.  And others are
20 referring to legal prosecution documents where the scientists
21 that were involved in the work wouldn't -- not really much of a
22 connection to the recent prosecution events.  So that's sort of
23 the first issue.
24            But to address the claims themselves, as we set forth
25 in Footnote 8 of the joint letter, these are not new claim

1  elements.  These are elements that directly correlate to
2  Helsinn's marketed product, Aloxi.  That's really been the
3  focus of discovery from day one in this case, and has been the
4  central focus of defendants' on sale bar defense.  And
5  defendants admit on Page 4 of the letter that they've already
6  had a corporate deposition testimony with respect to Helsinn's
7  marketed product.  That's the product that has a 0.25
8  milligrams dose amount to five milliliter volume.  And, in
9  fact, that deposition took 1.5 days.  If you'll remember, Your
10 Honor, last year you suggested a compromise, and we ended up
11 offering Dr. Calderari for both the entire day Friday, and part
12 of the day Saturday, and he was extensively questioned.  And we
13 cited some exemplary portions of that testimony where he was
14 squarely asked about the five milliliter volume, the 0.25
15 milligram dose, how those were determined, who determined them.
16 This is extensively discovery in the first case.  And really
17 this is a lot about fairness.  You know, we came to defendants
18 and we gave up two patents, these two process patents.  Where
19 the patents the defendants had focused on originally to say
20 they needed fact discovery because the processes were somewhat
21 new we said, okay, well, look, we want to move this forward.
22 We will give you the two patents, which is, frankly, you know,
23 quite a lot to give in any case.  And more than that, we also
24 reduced the asserted claims to all of the patents, including
25 the original patents, in half.

1           And as part of the exchange, we received defendants'
2  commitment to limit discovery to new issues.  And all we're
3  hearing about is well, there are some new claim elements.
4  Which, first of all, we don't agree with, Your Honor.
5           But even if there were any parts of the claims that
6  are new that -- new issues is not the same as new claims.  And
7  really what defendants are attempting to do is to get a second
8  bite at the apple on the original on sale bar defense which, by
9  the way, their invalidity contentions show exactly the same.
10 They focused on the same formations, the same alleged sale
11 transaction, nothing has changed there.
12          And really what we're talking about is the same set
13 of facts defendants already have.  There's nothing new, Your
14 Honor.  We have nothing more to tell them about our development
15 of this Aloxi invention.
16          The -- what they're seeking is precisely what Your
17 Honor foreshadowed, is this is really about extra discovery.
18 It's applying those facts to new claim elements, that's what
19 experts are for.  Fact witnesses aren't going to talk about
20 claim limitations.  They're going to talk about what they did,
21 and we've already done that.
22          They've deposed the inventors.  They've gotten Dr.
23 Calderari as a 30(b)(6) witness for a day and a half, and
24 they've had exhaustive discovery on all of these new claim
25 elements.

1            And briefly with respect to obviousness, we heard
2   something about information, and they want to know when
3   information became publicly available.  That has nothing to do
4   with the 30(b)(6) topics they're asking about, which is
5   Helsinn's confidential work.  Which, by the way, as we pointed
6   out in Footnote 11 of the letter, is irrelevant as a matter of
7   Federal Circuit law.
8            But really the point is that they received this
9   discovery, an extensive amount, so it violates the parties'
10  original agreement in March to avoid duplicative discovery.
11  But then more than that, we then had an agreement after
12  agreeing not to duplicate discovery.  And as part of that
13  agreement, we gave valuable consideration.  And really the --
14  what we obtained from that was the consolidated schedule and
15  the agreement to limit fact discovery.  And that would be
16  eviscerated by having to go through another seven-hour
17  deposition which, again, could never cover -- one deposition
18  could never cover all of these topics which is a problem,
19  number one.
20           And, number two, the witness who would have to
21  address these topics is not available until mid-September
22  because of holiday plans, Helsinn shutdown in August, and his
23  commitments as President of the company upon his return.
24           But then very briefly on the last point, the
25  prosecution topic, you know, first of all, this is the first

1  we've ever heard from defendants essentially justifying why
2  this very broad topic is relevant to anything.  They're
3  mentioning their equitable defense, which we just received a
4  description of in an interrogatory response about a week or so
5  ago.
6          But the problem with this, Your Honor, is a
7  deposition on the prosecution documents would be very wasteful.
8  Other than the documents themselves, the work that led to them
9  is going to be privileged.  And these depositions, inevitably,
10 end up in a number of instructions not to answer for privileged
11 reasons.  And for that reason, in the original case, defendants
12 have an identical topic on prosecution events, and the parties
13 agreed that there would be no need for a 30(b)(6) topic on
14 this.  And we submit again that, you know, this would be a
15 wasteful separate deposition that would be needed.
16          And I think, Your Honor, I believe I've addressed the
17 points that you were interested in.  But I'd be more than happy
18 to address any further questions you have.
19          THE COURT:  I appreciate that.  Anybody else want to
20 be heard?
21              (No audible response heard)
22          THE COURT:  Okay.  I am -- I'm going to deny the
23 defendants' request for this additional deposition of a
24 30(b)(6) witness on the topics that are set forth in the
25 defendants' notice.

1              I largely adopt the plaintiffs' position as
2    articulated, both in the letter of July 3rd, and by Mr.
3    Dittmann on this call, that while Mr. Cohen has pointed perhaps
4    to arguably new claim elements in the '219 patent, these are
5    not new issues.  These are issues which have been exhaustively,
6    as I said earlier, discovered through at least a dozen
7    depositions in this case.
8              Moreover, I think to the extent there are nuances for
9    arguments to be made related to the '219 patent, that those
10   nuances or differences can be addressed in the course of expert
11   discovery.
12             The Court has the authority to manage discovery to
13   the end of the case to be prosecuted efficiently, economically,
14   and fairly.  And I believe that in the totality of the
15   circumstances presented here, that the limitation established
16   by the parties' agreement and incorporated into the Court's
17   case management order of May 29th limiting additional discovery
18   to new issues is not met by the request for this deposition.
19   So I would deny the request to compel that deposition.
20             The housekeeping matter to which I referred earlier
21   comes in a letter dated July 28 with a series of modifications
22   to the existing case management schedule.  And I've reviewed
23   those.  They are all relatively modest, and I will sign that
24   order today and include a series of telephone status
25   conferences.  I'll review the prior order, and either adopt the

```
 1  dates that were already on that order or modify them.  But
 2  we'll operate henceforth from the proposed schedule attached to
 3  the July 28th letter.  Okay?  Today's the 30th, I'll sign it
 4  now.
 5            MR. LIZZA:  Your Honor --
 6            THE COURT:  All right.
 7            MR. LIZZA:  -- this is --
 8            THE COURT:  Are there any other -- go ahead.
 9            MR. LIZZA:  Your Honor, Charlie Lizza here.
10            Just, again, along the lines of housekeeping, I think
11  we have a schedule -- telephone conference in August, and I
12  assume that this order now will supersede the need for that
13  conference.
14            THE COURT:  Unless anybody thinks differently, that
15  was my plan.  I will vacate -- I'll essentially vacate the
16  prior schedule with respect to conferences.  And the new
17  schedule will be reflected on the order that I'm signing today.
18  Okay?
19            MR. LIZZA:  All right.
20            THE COURT:  All right.  So you can clear your
21  calendars of any earlier dates, and -- and refer exclusively to
22  the dates that will be included on Page 3 of the order that I'm
23  going to sign and enter today.  Okay?
24                 (No audible response heard)
25            THE COURT:  All right.  Any --
```

19

1        UNIDENTIFIED ATTORNEY:  Thank you, Your Honor.
2        THE COURT:  All right.  Anything else then for today,
3 folks?
4             (No audible response heard)
5        THE COURT:  All right.  Thank you.  Enjoy the rest of
6 the summer.  I'll speak to you sometime in the fall, unless you
7 need me in the meantime, in which case, you know where to find
8 me.
9        Thank you.
10       UNIDENTIFIED ATTORNEY:  Thank you, Your Honor.
11       THE COURT:  All right.
12       UNIDENTIFIED ATTORNEY:  Thank you, Your Honor.
13       UNIDENTIFIED ATTORNEY:  Thank you.
14    (Whereupon, at 12:06 P.M., the hearing was adjourned.)

20

```
 1
 2
 3
 4
 5                    CERTIFICATE OF TRANSCRIBER
 6
 7     I, KAREN HARTMANN, a certified Electronic Court
 8  Transcriber, certify that the foregoing is a correct transcript
 9  from the electronic sound recording of the proceedings in the
10  above-entitled matter.
11
12  [signature: Karen Hartmann]
13
14  Karen Hartmann, AAERT CET**D0475 Date:  August 11, 2014
15  TRANSCRIPTS PLUS, INC.
16
17
18
19
20
21
22
23
24
25
```

**TRANSCRIPTS PLUS, INC.**
**PHONE 215-862-1115 ● FAX 215-862-6639 ● E-MAIL CourtTranscripts@aol.com**