UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

HELSINN HEALTHCARE S.A. and ROCHE
PALO ALTO LLC,

               Plaintiffs,

    v.

TEVA PHARMACEUTICALS USA, INC.,
and TEVA PHARMACEUTICAL
INDUSTRIES, LTD.,

               Defendants.

Civil Action No. 11-3962 (MLC)
(Consolidated)

**CLERK'S OPINION GRANTING
IN PART AND DENYING IN PART
PLAINTIFFS' MOTION TO
TAX COSTS**

This matter has come before the Clerk on the motion [Dkt. Entry 367] of Plaintiffs Helsinn Healthcare S.A. and Roche Palo Alto LLC ("Plaintiffs") to tax costs against Defendants Teva Pharmaceuticals USA, Inc. and Teva Pharmaceutical Industries, Ltd. (collectively, "Teva,") pursuant to Federal Rule of Civil Procedure 54(d) and Local Civil Rule 54.1.   Teva opposes this motion.

This Hatch-Waxman litigation, which originated on July 8, 2011 with the filing of Civ. A. No. 11-3962, involves several of Plaintiffs' patents for their Aloxi brand 0.25 mg/5 mL and 0.075 mg/1.5 mL palonosetron hydrochloride intravenous solutions.   Plaintiffs alleged that Teva and other defendants, i.e., Dr. Reddy's Laboratories, Ltd. and Dr. Reddy's Laboratories, Inc. (together, "Reddy") and Sandoz, Inc. ("Sandoz") (collectively, "the Defendants"), infringed their patents by submitting for FDA approval ANDAs for generic versions of Plaintiffs' products prior to the expiration of the patents.

This litigation consists of three consolidated cases which involve four of Plaintiffs' patents, all related to Plaintiffs' Aloxi brand products, .   At issue in the seminal case, Civ. A. No. 11-3962,

were Plaintiffs' U.S. Patents Nos. 7,947,724 and 7,947,725 (the "'724" and "'725" patents, respectively).   A third patent, Plaintiffs' U.S. Patent No. 7,960,424 (the "'424" patent), was the subject of Plaintiffs' later case, Civ. A. No. 11-5579, which was consolidated with Civ. A. No. 11-3962 on October 27, 2011.   [Dkt. Entry 68].[1]   A fourth patent, Plaintiffs' U.S. Patent No. 8,598,219 (the "'219" patent), was brought into this litigation when Plaintiff's additional suit, Civ. A. No. 13-5815, was consolidated with the two earlier actions on May 29, 2014.   [Dkt. Entry 174].   The three consolidated actions involve the same parties and patents sharing a common priority application.[2]

On June 14, 2013, the parties stipulated that the manufacture and distribution of the products covered by the Defendants' ANDAs would infringe claims of Plaintiffs' '724, '725 and '424 patents if those patents were valid and enforceable.   [Dkt. Entries 153, 154].

On September 5, 2014, after Civ. A. No. 13-5815, involving the '219 patent, was consolidated with the prior two actions, all parties filed motions for summary judgment [Dkt. Entries 188, 193, 194, 201, 206, 208], addressing the validity/invalidity and infringement/non-infringement of the '219 patent.

Those motions filed by Sandoz [Dkt. Entries 188, 194] were rendered moot on December 31, 2014, when Plaintiffs and Sandoz entered into a Consent Judgment and Dismissal Order [Dkt. Entry 247], dismissing without prejudice, all of Plaintiffs' claims and Sandoz's counterclaims against each other which are the subject of this litigation.

---

[1]      References herein are to docket entries in Civ. A. No. 11-3962.

[2]      The '724 patent is also the subject of a fourth case against Reddy, Civ. A. No. 12-2867, which was not consolidated with these three actions and is still in the pre-trial phase.

With the trial date set for the imminent future, the remaining summary judgment motions [Dkt. Entries 193, 201, 206, 208] were denied without prejudice on May 19, 2015.   [Dkt. Entry 307].

An 11-day bench trial was held on June 2-5, 8-12, 15-16, 2015 [Dkt. Entries 319-333, 336-37, 339-41], with closing arguments presented on August 12, 2015.   [Dkt. Entries 352-53].

During the course of the trial, the remaining defendants, Teva and Reddy, stipulated that their ANDAs, in their .25 mg form, but not their .075 mg form, met the claims of Plaintiffs' '219 patent.   [Dkt. Entry 335].

On October 16, 2015, between the completion of the trial and the entry of final judgment, Plaintiffs and Reddy settled and entered a stipulation of dismissal.   [Dkt. Entry 355].   Teva remained as the only defendant.

Final judgment was entered on November 16, 2015.   [Dkt. Entries 360, 361].   The Court found in Plaintiffs' favor and against Teva on seven of the eight infringement claims, ruling that: the '724, '725 and '424 patents were valid and infringed by both Teva's proposed 0.25 mg/5 mL and 0.075 mg/1.5 mL products; and the '219 patent was valid and infringed by Teva's proposed 0.25 mg/1.5 mL product but not by its 0.075 mg/1.5 mL product.

On November 30, 2015, Teva filed a notice of appeal to the Court of Appeals for the Federal Circuit.   [Dkt. Entry 365].

Thirty days after the entry of judgment, on December 16, 2015, Plaintiffs filed the bill of costs here at issue.   [Dkt. Entry 367-3].    They seek therein the costs of:   printed and videotaped transcripts ($87,515.18); witness fees ($14,134.13); and copies ($11,444.62); or a total of $113,093.93.

While Teva does not object to the requested cost of copies, it argues that the cost of transcripts and witness fees must be taxed in a reduced amount, with granted costs totaling $74,543.45, rather than $113,093.93.   Teva further maintains that this proposed amount of $74,543.45 should be equally apportioned among all the Defendants and that costs taxed against it must be further reduced to account for the fact that Plaintiffs succeeded on only seven of their eight claims against Teva.   In sum, Teva contends that it should be taxed only $26,219.56. Def.'s Br. [Dkt. Entry 371].

## I.    Legal Standards

Plaintiffs' application is made pursuant to Fed. R. Civ. P. 54(d)(1), which provides in relevant part that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs – other than attorney's fees – should be allowed to the prevailing party."   In a patent case, the definition of "prevailing party" is governed by Federal Circuit law.   Manildra Milling Corp. v. Ogilvie Mills, Inc., 76 F.3d 1178, 1181-82 (Fed. Cir. 1996).   To be a prevailing party, a party must obtain relief on the merits of its claim that materially alters the legal relationship between the parties by modifying its opponent's behavior in a way that directly benefits that party.   Id. at 1182 (citing Farrar v. Hobby, 506 U.S. 103, 111-113 (1992)).

While the threshold issue of deciding prevailing party status is a matter of Federal Circuit law, the second inquiry, that of whether and how much to award, is a matter of regional circuit law.   Id. at 1183.   Therefore, the decisions of whether to award costs to the prevailing party and the amounts to be awarded are governed by Third Circuit law here.

In this Circuit, there is such a strong presumption that costs should be awarded to the prevailing party that, " '[o]nly if the losing party can introduce evidence, and the district court

can articulate reasons within the bounds of its equitable power, should costs be reduced or denied to the prevailing party.' " Reger v. Nemours Found., Inc., 599 F.3d 285, 288 (3d Cir. 2010) (quoting In re Paoli RR Yard PCB Litig., 221 F.3d 449, 468 (3d Cir. 2000)). The rationale behind this presumption is that the denial of costs is tantamount to a penalty. Id. at 288-89 (citing ADM Corp. v. Speedmaster Packaging Corp., 525 F.2d 662, 665 (3d Cir 1975)).

Despite this strong presumption, the clerk and district court do not have unfettered discretion to grant costs under Rule 54(d). Absent express statutory authorization, only those costs enumerated in 28 U.S.C. § 1920 may be taxed. Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 441 (1987). Those categories of taxable costs are:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

The Supreme Court reinforced its Crawford Fitting holding in Taniguchi v. Kan Pacific Saipan, Ltd., 132 S.Ct. 1997 (2012), wherein it limited the provision in §1920 (6) for the "compensation of interpreters" to the cost of oral translation. In denying the cost of document translation, the Court noted that its decision was "in keeping with the narrow scope of taxable costs." Id. at 2006.

In addition to Rule 54(d) and 28 U.S.C. § 1920, Plaintiffs' motion is governed by Local Civil Rule 54.1, which "establishes the general procedures to be followed in those cases

where a party is entitled to recover costs" under § 1920.   Lite, N.J. Federal Practice Rules,

Comment 2 to Rule 54.1 (Gann 2016 ed.) at 261.

Therefore, while a prevailing party is entitled to costs under Rule 54(d), "those costs

often fall well short of the party's actual litigation expenses."   In re Paoli, 221 F.3d at 458.

Furthermore, despite the presumption of granting costs to a prevailing party, that party must

provide sufficient information to carry its burden of showing that the costs sought fall within

the limits of § 1920.   Romero v. CSX Transp., Inc. 270 F.R.D. 199, 201-202 (D.N.J. 2010).

The Clerk finds that Plaintiffs are the prevailing parties here as their victory on seven

of their eight claims against Teva materially altered Teva's behavior in a way that significantly

benefitted Plaintiffs.   The final judgment enjoins Teva from manufacturing and distributing the

products that are the subject of its ANDA until the expiration of Plaintiffs' patents.   While Teva

contends that taxed costs should be reduced because Plaintiffs failed to prevail on one of their

claims, Teva does not dispute that Plaintiffs are the prevailing parties.   A party is not required

to prevail on all of its claims in order to qualify as a prevailing party under Rule 54.   Shum v. Intel

Corp., 629 F.3d 1360, 1367-68 (Fed. Cir. 2010), citing Kemin Foods, L.C. v. Pigmentos Vegetales

Del Centro S.A. de C.V., 464 F.3d 1339, 1347-48 (Fed. Cir. 2006).

Plaintiffs have followed the procedural requirements of L. Civ. R. 54.1 and 28 U.S.C.

§ 1924 by timely filing and serving a verified Bill of Costs with copies of invoices appended,

in addition to their notice of motion.   [Dkt. Entries 367, 367-3].   Further, in her Declaration

("Weir Decl.") [Dkt. Entry 367-2], Plaintiffs' counsel, Dana Weir, Esq., both verifies the costs

and sets forth the nature of the charges sought.   As such, the Clerk turns now to the specific

categories of costs requested by Plaintiffs, in the order in which they fall within § 1920.

## II.     Fees for Printed or Electronically Recorded Transcripts, § 1920 (2)

Under § 1920 (2), Plaintiffs request a total of $87,515.18 in transcript costs, consisting

of $16,808.43 in trial transcripts and $70,706.75 in printed and videotaped deposition transcripts.

### *Trial Transcripts*

Plaintiffs seek the taxation of the cost of the trial transcripts, which they assert were

necessarily obtained for use during the trial, for the preparation of closing arguments and for

Teva's appeal.   The requested $16,808.43 cost of the trial transcript, whose pages number 2,549

after deducting index pages, has been calculated at the "expedited" rate of $2.43/page for closing

arguments and the "hourly" rate of $6.92/page for the 11-day balance of the trial.   Pls.' Br. at 7-8.

Plaintiffs explain that hourly transcripts were used during the course of the trial to refer to prior

witnesses' testimony and to defend the credibility of their witnesses.   Id.   They state, "[g]iven the

complexity of the case, and the need to prepare and defend cross-examinations, these costs

are reasonable." Id. at 7.

Fees for recorded transcripts are taxable under § 1920 (2) if the transcripts were

"necessarily obtained for use in the case."   Local Civil Rule 54.1(g) (6) specifies:

> The cost of a reporter's transcript is allowable only (A) when specifically
> requested by the Judge, master, or examiner, or (B) when it is of a statement
> by the Judge to be reduced to a formal order, or (C) if required for the record
> on appeal. . . Copies of transcripts for an attorney's own use are not taxable in
> the absence of a prior order of the Court.   All other transcripts of hearings,
> pretrials and trials will be considered by the Clerk to be for the convenience
> of the attorney and not taxable as costs.

Teva does not object to taxing the trial transcript costs, and indeed, Judge Cooper

essentially requested the transcripts when she suggested that counsel refer to them in their

closings, upon which she routinely relies to instruct her decision, in lieu of proposed findings

of fact and conclusions of law.   [Dkt. Entry 314]; Tr. 15:21-23, 16:16-18.   Therefore, the specifications of L. Civ. R. 54.1(g) (6) are met here.

However, Teva does object to the rate of taxation sought by Plaintiffs.   It argues that Plaintiffs' request for hourly copies for the 11 days is excessive and suggests reducing the rate from $6.92/page to the expedited rate of $2.43/page, used for the closing argument pages. Teva points out that the trial was "relatively streamlined," due to the parties' stipulations and cites the lack of Plaintiffs' need to challenge the admission of evidence since the parties together developed a list of admitted trial exhibits at the start of the trial .   Def.'s Br. at 3.

To support taxation of the cost of hourly transcripts, Plaintiffs cite examples where transcripts of prior testimony were used during the direct and cross examination of witnesses. Pls.'Br. at 6, citing Dkt. Entry 337 at 32-33, Dkt. Entry 328 at 205.   Plaintiffs further explain that hourly transcripts were needed to defend the credibility of their witnesses when Plaintiffs objected to perceived mischaracterizations of prior testimony by defense counsel.   Pls.' Br. at 6-7. In one such instance, during re-direct by Reddy's counsel, the Court asked defense counsel to refresh the witness' recollection but counsel was unable to for lack of the morning's transcript. Dkt. Entry 340, Tr. 200:14-16.

The Clerk believes that Plaintiffs have shown a particularized need for hourly copies in this rather complex patent litigation requiring the testimony of multiple expert witnesses for both sides during an 11-day trial.   Further, Judge Cooper's suggestion that defense counsel refresh the witness' recollection was an implicit recognition by the Court of the utility of the hourly copies. Immediate transcripts assist the court, as well as counsel, to assess the credibility of witnesses. E.E.O.C. v. Sears, Roebuck and Co., 114 F.R.D. 615, 623 n.6 (N.D.Ill. 1987), cited in Rogal v.

Am. Broadcasting Cos., Civ. A. No. 89-5235, 1994 WL 268250, at *3 (E.D.Pa. June 15, 1994), cited by Plaintiffs.   Compare Mylan Inc. v. SmithKline Beecham Corp., Civ. A. No. 10-4809, 2015 WL 1931139, at *5-6 (D.N.J. Apr. 28, 2015) (Clerk granted cost of hourly trial transcripts in patent license case, in which counsel referred to transcript multiple times during the course of 9-day trial) and Lawson v. Sun Microsystems, Inc., 1:07-cv-00196, 2016 WL 231317, at *6 (S.D. Ind. Jan. 19, 2016) (denying cost of even daily transcripts in simple breach of contract case, involving a two and one half day trial and no expert witnesses).   Accordingly, the Clerk grants the entire requested cost of trial transcripts or **$16,808.43**.

### *Deposition Transcripts*

Plaintiffs seek reimbursement of $70,706.75 for the cost of printed transcripts of 37 depositions and additionally, for videotaping charges of 8 of those depositions.   Pls.' Ex. C. [Dkt. Entry 367-2 at 109-184].

As with hearing transcripts, the costs of deposition transcripts are taxable under § 1920 (2) to the extent that the transcripts were "necessarily obtained for use in the case."   While our local rule, L. Civ. R. 54.1(g) (7) restricts taxation to the "fees and charges incurred in the taking and transcribing of depositions used at the trial," it is well-accepted that "[f]or the costs to be taxable, the depositions need not have been used at trial, and must only 'appear reasonably necessary to the parties in light of a particular situation existing at the times they were taken.'" Thabault v. Chait, Civ. A. No. 85-2441, 2009 WL 69332, at *7 (D.N.J. Jan 7, 2009) (quoting Datascope Corp. v. SMEC, Inc., Civ. A. No. 81-3948, 1988 WL 98523, at *3 (D.N.J. Sept. 15, 1988)); Lewis v. City of Chicago, No. 04 C 6050, 2012 WL 6720411, at *5 (N.D.Ill. Dec. 21, 2012) ("[t]he proper inquiry is whether the deposition was 'reasonably necessary' to the case at the

time it was taken, not whether it was used in a motion or in court").

Plaintiffs assert that they satisfy the necessity test for all of these depositions in that "[e]ach of the deponents in question either testified at trial, was listed by the parties as a proposed trial witness, was named in deposition designations, or was referenced during cross-examination." Pls.' Br. at 9.   Like the Clerk, Teva apparently agrees with Plaintiffs as it does not object to the concept of taxing the costs of the printed transcripts or of the videotapes, which were all played during the trial.

However, Teva again objects to the amounts to be taxed, protesting that Plaintiffs' request is over-inclusive because it encompasses the costs of non-taxable items such as word indices, exhibits and video-synchronization.   Teva provides a detailed chart, outlining the objectionable costs and setting forth proposed reduced costs, which total $51,031.51, rather than the requested $70,706.75.   Def.'s Br. at 5-10.

Teva correctly notes that in taxation motions, a dichotomy is drawn between services which are necessary and those which merely serve the convenience of counsel or the parties. While the costs of the former are taxable, the costs of the latter are not.   The Clerk routinely denies the costs of litigation support services, such as word indices, and exhibits, absent a showing of their necessity.   See e.g., Mylan Inc., 2015 WL 1931139, at * 7.   Here, Plaintiffs have not shown that these items were more than a convenience.   Therefore, the Clerk accepts the reductions for word indices and exhibits as proposed by Teva in its chart.

As for the eight videotaped depositions, Teva objects to the costs associated with just three of them:   the Bonadeo, DeLuca and Stella depositions.   The Clerk disagrees with Teva's position and grants most of the affiliated charges.

*Bonadeo videotape:*   Even though it is described as "Synchronized Video on DVT (7 Units)," the Clerk believes that this $770.00 charge is for the videotaping itself and not the non-taxable process of synchronization.   [Dkt. Entry 367-2 at 118].   The rate charged by Esquire Deposition Solutions, LLC ("Esquire") of $110 per unit is the same rate charged by Esquire for the Braglia "Video," to which Teva does not object.   Id. at 121.   This **$770.00** cost will be taxed.

*DeLuca videotape:*   Teva's statement that no receipt has been provided for these charges is inaccurate.   While it is barely legible, the invoice of Magna Legal Services ("Magna") has been provided and the Clerk has deciphered it as showing the first 2 hours at $280.00 and 6.5 additional hours at $85/hr. or a total of $832.50, the amount requested.   Id. at 133.   These Magna rates can be seen in the invoice for the Markman video.   Id. at 157.   This **$832.50** cost is granted.

*Stella videotape:* This charge, described as "DVD Sync (MPEG1 w/Load Files)," is from yet a third reporting service, Ellen Grauer Court Reporting Co. LLC ("Ellen Grauer").   Id. at 178. The charged rate of $195 per unit, resulting in a total charge of $975 for 5 units, appears excessive for a deposition which resulted in a 181 page printed transcript.   By comparison, the Bonadeo cost of $770 was for videotaping a deposition which resulted in a 414 page printed transcript.   The Clerk believes that this $975 charge covered more than mere videotaping but rather than deduct this entire charge per Teva's wish, the Clerk will award a fraction of it.   A glance at the Zahavi invoice, id. at 184, although one of Magna's, is helpful.   That deposition, captured in a 268 page printed transcript, id. at 183, resulted in total videotaping charges of $1,197.50, i.e., actual videotaping at a cost of $747.50 and a separate charge of $450.00 for "MPEG, split, burn & sync to DVD or CD."   Of the $1,197.50 total, the videotaping charge constitutes approximately 60% (747.50/1197.50). Accordingly, the Clerk grants 60% of the $975 Ellen Grauer charge or **$585.00**.

11

In light of the foregoing, the Clerk grants deposition transcript costs in the amounts suggested in Teva's chart, Def.'s Br. at 5-10, with the above modifications made for videotaping charges.   Recaptured here, those granted costs are:

| **Deponent** | **Taxed Amount** |
| --- | --- |
| Gordon Amidon (2/7/14) | $  1,959.10 |
| Gordon Amidon (12/16/14) | $     800.00 |
| Tanios Bekaii-Saab | $     943.20 |
| Rachid Benhamza | $  1,132.95 |
| Daniele Bonadeo ($1,473.25 + $770.00) | $  2,243.25 |
| Riccardo Braglia | $  1,807.67 |
| John Buckingham (1/22/14) | $  1,637.44 |
| John Buckingham (12/12/14) | $     612.00 |
| Keith Candiotti (2/21/14) | $  1,160.85 |
| Keith Candiotti (2/13/15) | $     900.00 |
| Roberta Canella | $  1,596.85 |
| Patrick DeLuca (1/23/14) ($1,534.00 + $832.50) | $  2,366.50 |
| Patrick DeLuca (2/10/15) | $     790.00 |
| David Frame | $  2,871.20 |
| Karen Fancher (1/10/14) | $  1,716.40 |
| Karen Fancher (4/21/15) | $     319.60 |
| John Fruehauf | $  1,683.80 |
| Roger Fu | $     748.50 |

| **Deponent** | **Taxed Amount** |
|---|---|
| Jack Geltosky | $  1,092.40 |
| Lee Kirsch (4/30/14) | $  1,817.20 |
| Lee Kirsch (2/26/15) | $     905.20 |
| Kathleen Lee | $     920.70 |
| Thomas Malefyt | $  1,031.55 |
| Maurie Markman | $  3,093.10 |
| Zoya Marriott | $     991.85 |
| Andrew Miksztal | $     844.65 |
| Paul Myrdal (1/14/14) | $  2,086.00 |
| Paul Myrdal (12/9/14) | $  1,313.20 |
| Carmine Panuccio | $     732.00 |
| Carl Peck (12/13/13) | $     890.80 |
| Carl Peck (12/17/14) | $     571.20 |
| Silvia Sebastiani | $     512.00 |
| Bertram Spilker (1/16-17/14) | $  2,045.60 |
| Bertram Spilker (11/12/14) | $     847.60 |
| Valentino J. Stella ($575.10 + $585.00) | $  1,160.10 |
| Navin Vaya | $  4,284.80 |
| Limor Zahavi | $  2,789.75 |
| **Total:** | **$ 53,219.01** |

Combining the granted costs of trial transcripts ($16,808.43) and deposition transcripts ($53,219.01), "printed or electronically recorded transcripts" are taxed in the total amount of **$70,027.44** pursuant to § 1920 (2).

### III.     Witness Fees, § 1920 (3)

Fees for deposition and trial witnesses, amounting to $14,134.13, are sought by Plaintiffs pursuant to § 1920 (3).   Supporting receipts are within Exhibit D [Dkt. Entry 367-2 at 185-214].

As with the transcript costs, Teva does not dispute whether to tax, but rather, how much to tax in witness fees.   Noting that the statutory framework restricts reimbursement to economical fares, Teva takes issue with several first and business class airfares, as well as the substantiation of certain costs.   Teva concludes, "[w]ith the elimination of these premium and unsubstantiated travel costs, Plaintiffs' costs for their witness fees total **$5,873.25**, a reasonable reduction from the $14,134.13 that they currently seek."   Def.'s Br. at 12.   Teva's fallback position is that if these premium fares are not eliminated, "[a]t the very least, they should be reduced to reflect the 'most economical rate reasonably available.'   28 U.S.C. § 1821(c)(1)."   Id. at n.14.

Local Civil Rule 54.1(g) incorporates by reference 28 U.S.C. § 1821, which controls allowable witness fees:

> (1) The fees of witnesses for actual and proper attendance shall be allowed, whether such attendance was voluntary or procured by subpoena. The rates for witness fees, mileage and subsistence are fixed by statute (see 28 U.S.C. § 1821).   Witness fees and subsistence are taxable only for the reasonable period during which the witness was within the District.   Subsistence to the witness under 28 U.S.C. § 1821 is allowable if the distance from the courthouse to the residence of the witness is such that mileage fees would be greater than subsistence fees if the witness were to return to his or her residence from day to day.

L. Civ. R. 54.1(g) (1).

14

L. Civ. R. 54.1(g) (7) further provides that "[f]ees for the witness at the taking of a deposition are taxable at the same rate as for attendance at trial.(See L. Civ. R. 54.1(g )(1).)"

Section 1821 of Title 28 provides for the payment of witnesses' fees and allowances for their attendance in federal court.   28 U.S.C. § 1821(a) (1).   Subsection (b) therein allows a $40 per day attendance fee "for the time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance."   Subsection (c) provides for the actual expenses of the most economical common carrier that is reasonably available, traveling the shortest practical route, as well as "[a]ll normal travel expenses within and outside the judicial district," including parking fees and tolls. Subsection (d) allows a subsistence fee for a required overnight stay, provided that the per diem rate does not exceed the allowance established by the Administrator of General Services ("GSA"), pursuant to 5 U.S.C. § 5702(a), in the area of attendance.   GSA rates for lodging and for meals and incidental expenses ("M & IE"), including travel day M & IE (taxed at 75% of full day M & IE), can be found at www.gsa.gov/portal/category/100120 .

The applicable GSA per diem rates for depositions in New York City and Palo Alto are as stated by Plaintiffs' counsel, Weir Decl. ¶¶ 9, 13:

New York City, January/February 2014: lodging-$191.00; M & IE, full-$71.00; travel day-$53.25

New York City, December 2014:   lodging-$304.00; M & IE, full-$71.00; travel day-$53.25

New York City, February 2015:   lodging-$197.00; M & IE, full-$71.00; travel day-$53.25

Palo Alto, December 2013, December 2014:   M & IE, full-$56.00

The GSA rates during trial time of May/June 2015 for the Trenton/Princeton area were: lodging-$127.00; M & IE, full-$61.00; travel day-$45.75.

15

The one applicable mileage rate, correctly cited by Plaintiffs for Carl Peck's December 2013 travel by automobile, was $0.565/mile.   www.gsa.gov/portal/content/103969.

The Clerk has carefully reviewed the charges listed by Plaintiffs, Pls.' Br. at 25-28, and grants the bulk of them, making some adjustments for travel charges contested by Teva.   Teva cites several cases in which the court either denied or reduced airfares because they did not reflect the "most economical common carrier," as required under § 1821(c).   Def.'s Br. at 10-11.   The Clerk agrees that reductions are warranted and also makes some adjustments for overstated parking and rental car fees.

First, regarding Gordon Amidon, Teva contests one business-class and two first-class airfares between Detroit, MI and New York or Philadelphia.   For these disputed, elevated costs, the Clerk believes it is reasonable to award airfare in the amount of 50% of the business-class fare paid by the witness. See e.g., Crouch v. Teledyne Continental Motors, Inc., Civ. A. No. 10-00072, 2013 WL 203408, at *17 (S.D.Ala. Jan. 17, 2013); Ceglia v. Zuckerberg, No. 10-CV-00569A(F), 2012 WL 5988637, at *8 (W.D.N.Y. Nov. 29, 2012).   Therefore, instead of awarding the requested airfares of $1,410.00 (business-class), $1,842.20 (first-class) and $1,840.20 (first-class) for Gordon Amidon's travel, 50% of the business-class fare or $705.00 will be awarded for each of the three flights.

Regarding witness Keith Candiotti, Teva attacks both his first-class airfare of $1,323.20 for his trip from Miami to New York for his February 2015 deposition and substantiation for the requested airfare of $814.20 for travel to/from the trial.   Plaintiffs actually request reimbursement for three airfares incurred by this witness, the third being one for $507.80 for travel to/from his deposition in New York in February 2014.   While Teva does not refute

16

the $507.80 airfare, the type of substantiation provided by Plaintiffs for that cost is the same as that which Teva contests for the $814.20 fare.   For both, Plaintiffs have provided no airline receipt, but instead, the witness' invoice to Plaintiffs' counsel.   [Dkt. Entry 367-2 at 199, 204].

The Clerk accepts Mr. Candiotti's invoices in satisfaction of the requirement in L. Civ. R. 54.1(b) that the movant append "invoices in support of the request for each item."   There are sufficient details in the totality of this witness' proofs to support the taxation of reasonable costs. Mr. Candiotti's invoices indicate that the requested fees of $507.80 and $814.20 are for air travel and provide the relevant dates.   However, in the absence of the actual receipts for these airfares, the Clerk cannot confirm the class of the ticket.   Nevertheless, he determines that $507.80 is a reasonable amount for the roundtrip Miami to New York flights and awards that amount for all three of Mr. Candiotti's flights, including the one for which he paid first-class airfare of $1,323.30.

Teva also criticizes the substantiation for the requested $400.10 airfare for Carl Peck's travel to/from the trial.   For this witness too, Plaintiffs have provided no airline receipt, but just the witness' invoice to Plaintiffs' counsel.   [Dkt. Entry 367-2 at 214].   Again, the Clerk finds sufficient detail in that invoice, which provides the date of "6/12/2015" and "United Airlines airfare – Newark, NJ to Washington, DC."   This airfare appears reasonable to the Clerk who will tax that amount.

Finally, Teva disputes the $630.98 travel charge requested in connection with Zoya Marriott's trip from Needham, MA to attend the trial because Plaintiffs again have submitted no receipts.   This witness' "Summary of Professional Fees" merely states "June 2015" and "Travel." [Dkt. Entry 367-2 at 207].   As Teva states, "Plaintiffs fail to even identify the type of travel that took place.   (*Id.* (identifying expenses as '[t]ravel' and providing no detailed receipt or mileage

17

information).).”   Def.'s Br. at 12.   Our local rule requires that “the nature of the charge . . . be readily understood.”   L. Civ. R. 54.1(b).   The Clerk agrees with Teva that this charge should be denied because it is vague and the reasonableness of the requested amount cannot be ascertained.

After perusing the invoices, the Clerk determines that a few additional adjustments should be made in connection with the fees for Keith Candiotti, for whom Plaintiffs request one attendance day and one travel day for his one day depositions in February of 2014 and 2015 and one day trial testimony.   Parking at Miami International Airport, charged at the rate of $17/day, should be taxed for just two days or $34.00 for each of the three time periods, not the requested four ($68.00 – Feb. 2014), three ($51.00 - Feb. 2015) and six ($102.00 – June 2015) days.   Also, the rental car, charged at $287.14 for six days during the trial [Dkt. Entry 367-2 at 205], should be charged at 1/3 of that total or $96.00.

Considering all of the foregoing, the Clerk taxes the witness fees requested by Plaintiffs for statutory attendance ($40/day), travel and subsistence, with the following deductions:

| Witness | Requested Fee | Taxed Amount | Deduction |
|---|---|---|---|
| Gordon Amidon | $1,410.00 | $ 705.00 | $ 705.00 |
| | $1,842.20 | $ 705.00 | $1,137.20 |
| | $1,840.20 | $ 705.00 | $1,135.20 |
| | | | |
| Keith Candiotti | $1,323.20 | $ 507.80 | $ 815.40 |
| | $ 814.20 | $ 507.80 | $ 306.40 |
| | $ 68.00 | $ 34.00 | $ 34.00 |
| | $ 51.00 | $ 34.00 | $ 17.00 |
| | $ 102.00 | $ 34.00 | $ 68.00 |
| | $ 287.14 | $ 96.00 | $ 191.14 |
| | | | |
| Zoya Marriott | $ 630.98 | $ 00.00 | $ 630.98 |
| | | | |
| Total: | | | $5,040.32 |

Pursuant to § 1920 (3), witness fees are taxed in the amount of Plaintiffs' requested total ($14,134.13) less the above deductions ($5,040.32) or a total of **$9,093.81**.

### IV.   <u>Cost of Making Copies, § 1920 (4)</u>

Under § 1920 (4), Plaintiffs seek reimbursement of the $11,444.62 cost of making copies. This cost is comprised of a third party's charge for copying Plaintiffs' PTX exhibits ($3,244.56) and Defendants' trial exhibits ($5,309.52), for stamping trial and PTX exhibits ($2,709.34) and for printing closing slides ($181.20).   Pls.' Br. at 29.

These paper copying costs, which Plaintiffs have limited "to those directly before trial and for use in closing arguments," Pls.' Br. at 28, exclude the cost of non-taxable items such as custom tabs and binders.   [Dkt. Entry 367-2 at 216-222].   While these costs cover approximately 48,000 black and white copies and 5,200 color copies, the number of copies does not appear excessive, considering the complexity of the trial and its length.   Moreover, Plaintiffs' counsel avers that, as required under § 1920 (4), these copies were "necessarily obtained for use in the case," Weir Decl. ¶15, and Teva does not object to these requested costs.   Furthermore, the $.12 per page rate for black and white copies and $.60 per page rate for color copies are reasonable.

While the Clerk is inclined to tax the cost of the copies themselves, he is compelled to deny the $2,709.34 cost of what is described in the On Press Graphics Inc. invoices as the "Endorsing" and "Stamping" of exhibits.   <u>Id.</u> at 219-21.   As noted earlier in Section I, notwithstanding the lack of objection by Teva, under Supreme Court precedent, the Clerk is prohibited from granting costs not enumerated in § 1920, a statute narrowly applied by our highest court.   <u>Crawford Fitting Co.</u>, 482 U.S. at 437; <u>Taniguchi</u>, 132 S.Ct. at 1997.

In recent years, the Third Circuit has had the opportunity to address the limits of the taxation of the costs of copies under subsection (4) of § 1920.   In the case of <u>Race Tires Am., Inc. v. Hoosier Racing Tire Corp.</u>, that court rendered a ground-breaking decision on this topic that is both very restrictive and well-respected by other courts.   674 F.3d 158 (3rd Cir. 2012).   When faced with multiple categories of costs relating to electronically stored information ("ESI"), the Third Circuit ruled that "only the scanning of hard copy documents, the conversion of native files to TIFF, and the transfer of VHS tapes to DVD involved 'copying,' and that the costs attributable to only those activities are recoverable under § 1920(4)'s allowance for the 'costs of making copies of any materials.'"   <u>Id.</u> at 171.

The <u>Race Tires</u> case did not explicitly address the cost of stamping or endorsing. However, it observed that in the pre-digital era, none of the various steps which preceded the actual copying of documents, such as locating paper files, would have been taxed:

> It may be that extensive "processing" of ESI is essential to make a comprehensive and intelligible production.   Hard drives may need to be imaged, the imaged drives may need to be searched to identify relevant files, relevant files may need to be screened for privileged or otherwise protected information, file formats may need to be converted, and ultimately files may need to be transferred to different media for production.   But that does not mean that the services leading up to the actual production constitute "making copies."

<u>Id.</u> at 169.   The court reasoned, "that is because Congress did not authorize taxation of charges necessarily incurred to discharge discovery obligations.   It allowed only for the taxation of the costs of making copies."   <u>Id.</u>

Post-<u>Race Tires</u>, the Clerk has denied the costs of Bates labeling, based upon the decision of the Fourth Circuit which found such costs non-taxable, in reliance upon the <u>Race Tires</u> holding. <u>Cordis Corp. v. Abbott Labs.</u>, Civ. A. Nos. 07-2265, 07-2477, 07-2728 (D.N.J. June 6, 2014)

[Dkt. Entry 162 at 35], citing <u>Country Vintner of N. Carolina v. E. & J. Gallo Winery, Inc.,</u> 718 F.3d 249 (4th Cir. 2013).

Even before <u>Country Vintner</u>, the Clerk denied this type of cost, which is a production step that is separate and apart from the act of making copies.   See <u>Warner Chilcott Labs. Ireland Ltd. v. Impax Labs., Inc.</u>, Civ. A. Nos. 08-6304, 09-2073, 09-1233, 2013 WL 1716468, at *10-11 (D.N.J. Apr. 18, 2013), citing <u>Amana Society, Inc. v. Excel Eng'g, Inc.</u>, No. 10-CV-168-LRR, 2013 WL 427394, at *5-7 (N.D.Iowa Feb. 4, 2013).

The Clerk's analysis is supported by recent decisions from other district courts.   One such district court explained, "[a]dhering to the plain meaning of the language utilized in § 1920(4), this Court cannot construe the term 'copies' to include activities entirely unrelated to providing a full and complete copy of a document or other material. Bates labeling is an organizational procedure, not a method of replication."   <u>Jo Ann Howard & Assocs., P.C. v. Cassity</u>, Case No. 4:09CV01252 ERW, 2015 WL 7422199 at *8 (E.D.Mo. Nov. 20, 2015).

Earlier this week, another district court denied the costs of hole-punching, tabbing and binding copies because "[s]ection 1920(4) permits recovery only for 'making copies,' not for the processes of collating, binding, sorting, and filing them."   <u>Cascades Computer Innovation, LLC v. Samsung Electronics Co.</u>, Case No. 11 C 4574, 2016 WL 612792, at *6 (N.D.Ill. Feb. 16, 2016).

Based upon the above analysis, the Clerk denies the requested $2,709.34 cost of stamping exhibits and taxes copying costs in the amount of **$8,735.28** ($11,444.62 - $2,709.34 ).

### V.   Apportionment of Costs Among Defendants or Joint and Several Liability?

After arguing for the reduction of costs in the above-discussed categories, Teva proposes that the Clerk apportion these reduced costs equally among all Defendants.   Def.'s Br. at 12-15.

21

Teva states, "[h]ere, Plaintiffs' requested costs encompass multiple years of discovery during which time Plaintiffs' [sic] pursued their claims against not only Teva, but also two other defendants." Id. at 13. Teva points out that the claims against Sandoz were dismissed only six months before trial and those against Reddy were dismissed only after that defendant actively participated throughout the entire trial. Id. at 14. Teva relies upon the principle of equity in pointing out that "all three defendants stood to benefit from a successful litigation and contributed to Plaintiffs' costs because all three defendants were pursuing the same or overlapping defenses of noninfringement and invalidity." Id.

In support of its position, Teva emphasizes that part of the Paoli case wherein the Third Circuit stated that the court may choose "to disaggregate costs and to impose them individually." 221 F.3d at 469. However, the Paoli ruling actually undermines Teva's argument. In that case, the circuit court found that, with the exception of two plaintiffs, discussed below, the district court did not abuse its discretion in not apportioning costs among the losing nineteen plaintiffs, given the similarity of most of the plaintiffs' claims and related costs incurred. In so ruling, it stated that "[t]he Plaintiffs have adduced no evidence suggesting that these costs could be connected – to a greater or lesser degree – with any of the particular Plaintiffs." Id. at 470.

However, it held that the lower court did abuse its discretion in imposing joint and several liability of all of the costs against two plaintiffs whose cases were different in kind from the rest of the plaintiffs' and whose claims accounted for only a fraction of the defendants' costs, particularly where the plaintiffs were able to separate out the money spent by defendants in defending against those two plaintiffs' claims. The district court's joint and several costs award penalized those two plaintiffs and was vacated. Id. at 470-471.

Here, as noted above, Teva states that "all three defendants were pursuing the same or overlapping defenses of noninfringement and invalidity," Def.'s Br. at 14, hence the Court's consolidation of the three cases.   Teva cites the similarity of the Defendants' defenses and does not connect particular costs with particular Defendants.   Therefore, Teva has failed to show that costs should be apportioned among the Defendants.   As the Third Circuit held in <u>Paoli</u>, "the burden [is] on the losing parties to introduce evidence and persuade the court that costs should be apportioned, and in the event that they fail to do so, the default rule is that costs may be imposed jointly and severally."   221 F.3d at 469.   Finding that Teva has failed its burden, the Clerk declines to apportion costs among the Defendants and instead, invokes the default rule of joint and several liability.

Furthermore, in making its equitable argument, Teva asks the Clerk to exercise his discretion.   While L. Civ. R. 54.1(g) (4) provides that "[w]here costs are taxed *in favor of* multiple parties there shall be no apportionment by the Clerk," (emphasis added) and does not address an award *against* multiple parties, the Clerk shies away from exercising his discretion, as a general matter.   The Third Circuit has described the role of the Clerk of the Court as "ministerial," <u>In re Paoli</u>, 221 F.3d at 461, and the roles of the Clerk and the Court have been duly distinguished also by this Court.   <u>Thabault</u>, 2009 WL 69332, at *3 ("[T]he provisions of Local Rule 54.1(g) provide mandatory rules only for the Clerk; they do not expressly limit the Court's discretion pursuant to § 1920.").   For this reason too the Clerk denies Teva's request that he exercise his discretion and assess costs against the dismissed defendants, Sandoz and Reddy.

## VI.   <u>Plaintiffs' Less than Total Success on the Merits</u>

Teva asserts a final ground for the reduction of costs in Plaintiffs' favor, i.e., Plaintiffs'

less than 100% success on the merits of their case.   Teva maintains that it is the prevailing party

with respect to its 0.075/1.5 mL product and therefore, because Plaintiffs failed on one of their

eight claims against Teva, the Clerk should reduce Plaintiffs' cost by one-eighth, or 12.5%.

A prevailing party may recover all of its costs even though it achieved limited success on

the merits of its action.   This is so because often, a common core of facts underlies both the

successful and unsuccessful claims, and therefore, the same costs would have been incurred,

even in the absence of the unsuccessful claims.   See e.g., Pelzer v. City of Philadelphia,

771 F. Supp. 2d 465, 473 (E.D. Pa. 2011) (rejecting defendants' plea to reduce plaintiff's costs to

eliminate those incurred in connection with her unsuccessful claims, because the successful and

unsuccessful claims were factually and legally interrelated and "it [wa]s impossible to assign

specific costs to certain claims"); Taylor v. Republic Services, Inc., No. 1:12-CV-00523-GBL,

2014 WL 325169, at *9 (E.D. Va. Jan. 29, 2014) (same).

Conversely, courts have denied § 1920 costs where they have been shown to have arisen

solely out of unsuccessful claims or counterclaims. See e.g., Ensign Yachts, Inc. v. Arrigoni,

Civil No. 3:09-cv-209, 2012 WL 4372002, at *7 (D. Conn. Sept. 24, 2012); Rynd v. Nat'l Mut.

Fire Ins. Co., No. 8:09-CV-1556-T-27TGW, 2012 WL 939387, at *21 (M.D.Fla. Jan. 25, 2012)

(report and recommendation), adopted, 2012 WL 939247 (M.D. Fla. Mar. 20, 2012).

The very recent Cascades Computer Innovation, LLC case is particularly on point here.

2016 WL 612792.   There, the jury found that plaintiff Cascades' patent claims were valid but

not infringed by defendant Samsung.   Using an analysis similar to the Clerk's above, based upon

the Manildra Milling and Shum cases, the court found that Samsung was the prevailing party.

However, Cascades argued that Samsung was only a "partially prevailing party," and asked the

24

district court for the Northern District of Illinois to award Samsung costs proportionate to its victory.   The court rejected such a proposal outright.   However, it did find it unreasonable to allow Samsung the full amount of costs incurred "in sole pursuit of its counterclaim."   Id. at 3. For example, it denied Samsung the cost of depositions relevant only to Samsung's unsuccessful invalidity counterclaim, stating "Cascades will not be taxed costs for witnesses whose sole purpose was to provide information and testimony related to Samsung's invalidity counterclaim, on which Cascades prevailed."   Id. at 3.

Here, in requesting a 12.5% reduction due to Plaintiffs' failure to prevail on one of their eight claims against Teva, Teva is asking for exactly what the Cascades court denied, i.e., a proportionate reduction.   As Teva prevailed on the issue of infringement of the '219 patent by its 0.075 mg/1.5 mL product, it might be reasonable to deduct costs arising solely out of that claim.   However, Teva has failed to identify any costs which were specific only to that one claim upon which it prevailed.   Accordingly, the Clerk denies Teva's request to reduce costs granted to Plaintiffs by 12.5%.

## VII.   **Summary**

In conclusion, the Clerk taxes the following costs in favor of Plaintiffs and against Teva alone:

Fees for printed or electronically recorded transcripts, § 1920 (2):   $ 70,027.44

Witness fees, § 1920 (3):                                            $  9,093.81

Costs of making copies, § 1920 (4):                                  $  8,735.28

**TOTAL:**                                                          **$ 87,856.53**

For the reasons set forth above, the motion of Plaintiffs Helsinn Healthcare S.A. and Roche Palo Alto LLC to tax costs against Defendants Teva Pharmaceuticals USA, Inc. and Teva Pharmaceutical Industries, Ltd. is hereby **GRANTED IN PART AND DENIED IN PART**. An appropriate order follows.

WILLIAM T. WALSH, CLERK

By:   S/John T. O'Brien
          Deputy Clerk

February 18, 2016

26